# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EXAVIER L. WARDLAW** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-1942** |
| | : | |
| **THE CITY OF PHILADELPHIA,** *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                 **March 10, 2022**

      Philadelphian Exavier L. Wardlaw is unhappy with a Philadelphia public access television station deciding not to air his film. He pro se sues the City, the public access station, and its Board of Directors claiming the decision to not air his submitted film violates his civil rights. The City and the public access station and its Board of Directors move to dismiss the complaint. Mr. Wardlaw pleads no facts regarding the City. The public access station and its directors are not state actors under the pleaded facts. He fails to allege how a person discriminated against him based on political or racial reasons which may give rise to a disparate treatment claim. We grant the Defendants' motions and dismiss Mr. Wardlaw's complaint with leave to timely amend if he can plead facts allowing us to plausibly infer conduct by a state actor depriving him of his First Amendment rights or disparate treatment under civil rights laws.

    **I.**    **Pro se alleged facts.**

      Philadelphian Exavier L Wardlaw is a "member" of PhillyCAM Public Access TV because he is a Philadelphia citizen.[1] PhillyCAM is a private non-profit corporation which operates a public access channel.[2] Mr. Wardlaw submitted a film to PhillyCAM  he produced titled "Underground in Alphabet City" about the Lower East Side neighborhood of New York.[3] PhillyCAM rejected the film because "'it was not made in Phila[delphia] or by a Philadelphian' as dictated by the board

of directors . . . ."[4] But it aired "the Tony Paris Film, The Lower East Side Project, Democracy Now, and Gay USA non[e] of which was produced in Phila[delphia] or by a Philadelphian."[5]

Mr. Wardlaw returns with a pro se civil rights claim against the City, PhillyCAM, and its Board for acting on "political and racist motives" when it discriminated against him by treating him differently from other producers whose films PhillyCAM aired.[6] Mr. Wardlaw also claims PhillyCAM and its Board's rejection of his film for broadcast denied him the right of freedom of speech under the First Amendment.[7] Mr. Wardlaw requests we enjoin PhillyCAM from the allegedly discriminatory conduct against its members through an Order directed to the City. Mr. Wardlaw also requests we enjoin the Board from adopting discriminatory policies limiting members' "right to speak on the public airways" in an Order directed to PhillyCAM.

**II.    Analysis**

The City of Philadelphia, PhillyCAM, and its Board move to dismiss Mr. Wardlaw's pro se complaint or, alternatively, for a more definite statement. We grant Defendants' motions to dismiss under Rule 12(b)(6) with leave to amend.[8]

We construe Mr. Wardlaw's pro se complaint liberally as attempting to state two claims: (1) a deprivation of his First Amendment rights under 42 U.S.C. § 1983; and (2) a disparate treatment claim based on racial and political discrimination in violation of an unspecified section of the Civil Rights Act of 1964. We are "mindful of our 'obligation to liberally construe a pro se litigant's pleadings' . . . ."[9] We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[10] But "pro se litigants still must allege sufficient facts in their complaints to support a claim."[11]

### A. Mr. Wardlaw fails to state a claim under section 1983 for the deprivation of his First Amendment rights.

A state actor may be liable for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws …"[12] Congress does not confer rights upon Mr. Wardlaw through section 1983. The civil rights law is the vehicle used to bring federal constitutional claims in federal court. Mr. Wardlaw must plead two elements to proceed on civil rights claims: (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[13]

#### 1. Mr. Wardlaw fails to allege the City's involvement in the challenged decision.

The City moves to dismiss the First Amendment claim against it and argues Mr. Wardlaw pleads no facts which involve the City in the alleged wrongful conduct. Mr. Wardlaw does not allege a fact as to the City's conduct beyond naming the City as a party. Mr. Wardlaw may be under the impression PhillyCAM—a private non-profit group—acts on behalf of the City from his request we enjoin PhillyCAM in an order directed to the City and not the public access station. Mr. Wardlaw alleges no facts from which we may construe the City's involvement. Mr. Wardlaw's claims against the City are dismissed without prejudice to Mr. Wardlaw timely amending to add facts of the City's involvement in the decision to not air his film and how this decision affected his civil rights.

#### 2. Mr. Wardlaw fails to allege PhillyCAM and its directors are state actors.

Mr. Wardlaw alleges PhillyCAM and its Board violated his First Amendment right to free speech by not airing his film on the public access channel. PhillyCAM and its Board move to dismiss the First Amendment claim arguing: (1) they are not state actors; and (2) Mr. Wardlaw

fails to plead sufficient facts showing his film is protected speech. We need not address PhillyCAM's and its Board's second argument because Mr. Wardlaw fails to allege they are state actors.

PhillyCAM and its Board may only be liable to Mr. Wardlaw for the alleged deprivation of his First Amendment rights if they are state actors. This is a dispositive question. PhillyCAM is a private non-profit organization operating a public access channel on a cable system. PhillyCAM and the individual members of its Board maintain they are private actors and not subject to First Amendment restrictions on their editorial discretion under the Supreme Court's holding in *Manhattan Community Access Corporation v. Halleck*.[14] We agree.

In *Halleck,* plaintiffs produced and submitted a film for airing on the Manhattan public access channel operated by a private non-profit corporation. After airing plaintiffs' film, the non-profit corporation received complaints about the film's content and suspended plaintiffs from using the public access channels. Plaintiffs sued the corporation claiming it violated their First Amendment free-speech rights when it restricted their access to the public access channels because of the content of their film.[15] The corporation moved to dismiss arguing it is not a state actor and not subject to First Amendment restrictions on its editorial discretion. The district court agreed and dismissed the First Amendment claim. The court of appeals reversed, finding the corporation a state actor.

The Supreme Court decided to address the question of whether operators of public access cable channels are state actors subject to the First Amendment. The Court ultimately held a private entity operating a public access channel on a cable system is ***not*** "a traditional, exclusive public function" of the state – a hallmark of state action – transforming the private actor into a state actor for purposes of section 1983 liability.[16]

4

Under longstanding Supreme Court precedent, a private entity may qualify as a state actor "in a few limited circumstances" including when (1) the private entity performs a traditional, exclusive public function; (2) the government compels the private entity to take a particular action; or (3) the government acts jointly with the private entity.[17] The film producers in *Halleck* argued the corporation operating the public access channel exercises a traditional, exclusive public function. The Court disagreed, explaining "to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function."[18] The Court recognized its longstanding precedent stressing "very few" functions fall into the "traditional *and* exclusive" function.[19] Under the Court's cases, those functions "include, for example, running elections and operating a company town" while functions "including, for example, running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, and supplying electricity" do ***not*** fall into the "traditional and exclusive" function category.[20]

The Court held the operation of public access channels on a cable system "has not traditionally and exclusively been performed by government"; "[i]n short, operating public access channels on a cable system is not a traditional, exclusive public function within the meaning of [the] Court's cases" and does ***not*** qualify a private entity as a state actor.[21] As a matter of law, PhillyCAM's operation of Philadelphia's public access channel on a cable system does not transform it into a state actor under the "traditional, exclusive public function" test.

The film producers in *Halleck* made two other arguments to support their "traditional, exclusive public function" argument: (1) the relevant function of the challenged corporation is not simply the operation of a public access channel on a cable system, but rather more generally the

operation of a public forum for speech; and (2) because New York City designated the private corporation to operate the public access channel over a cable system and because the State heavily regulated the operation of public access channels, the private corporation is a state actor.[22] The film producers in *Halleck* alternatively argued the public access channel is actually the property of the City, and not a private entity, making the corporation a manager of government property on behalf of the City.[23]

The Court rejected film producers' arguments in their entirety. The Court distinguished the government providing a public forum for speech triggering First Amendment protections from a private entity providing a forum for speech where the First Amendment is not triggered, allowing the private entity to exercise editorial discretion of speech and speakers in the forum.[24] Under the Court's precedent, "[p]roviding some kind of forum for speech is not an activity that only governmental entities have traditionally performed. Therefore, a private entity who provides a forum for speech is not transformed by that fact alone into a state actor."[25] Simply hosting speech by others "is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints."[26] The Court further found the mere regulation of public access channels by the state does not make a private entity a state actor.[27]

The Court rejected the film producers' argument the public access channels are actually the property of the City making the private entity simply acting as a manager of government property on behalf of the City. The Court rejected this argument finding the record contained nothing to suggest the federal, state, or city government owned or leased either the cable system or the public access channels at issue, or otherwise had a property interest in the channels or system.[28] And an easement by the private entity or permission from a governmental entity to use public rights-of-way to lay cable does not render the private entity a state actor.[29]

Applying *Halleck* today, PhillyCAM is not a state actor under the "traditional and exclusive public function" test. Without sufficient allegations in Mr. Wardlaw's complaint, we cannot determine whether PhillyCAM and its Board are state actors under some other theory of state action. PhillyCAM and its Board are not state actors. But the Court in *Halleck* recognized areas where the operator of a public access channel may possibly be a state actor. As currently pleaded, Mr. Wardlaw offers no allegations plausibly stating a claim against PhillyCAM and its Board as a state actor.

Our Court of Appeals has yet to interpret the Court's holding in *Halleck*. Our colleague Judge Rufe recently applied the Supreme Court's reasoning in *Halleck*. In *Egli v. Chester County Library System*,[30] an author alleged Chester County Library System, Montgomery County Library System, Pennsylvania Cable Network, National Public Radio, and WHYY, Inc. violated his First Amendment rights under section 1983 and the Civil Rights Act of 1964. The author alleged the libraries and media outlets violated his civil rights when: the libraries rejected his book for their collections; the cable network declined to interview him about his book; and National Public Radio and WHYY, Inc. for declining to interview him as a guest on their programs. The media outlets moved to dismiss the claims, arguing they are not state actors. Judge Rufe agreed, applying *Halleck* to find government regulation of the media outlets did not transform them into state actors and the author failed to allege facts under the "few limited circumstances" where a private entity can qualify as a state actor under *Halleck*.[31]

Judge Schmehl recently applied *Halleck* to find general counsel for the Lehigh Valley Health Network is not a state actor. In *Rose v. Guanowsky*, a litigious patient claimed the health network's general counsel infringed on his First Amendment rights by sending him a letter directing him to cease communications with the health network's senior leadership regarding his

7

primary care doctor.[32] Judge Schmehl found the patient failed to plausibly allege facts demonstrating the general counsel for the private health system is a state actor.[33] Citing *Halleck*, Judge Schmehl explained while a private entity may qualify as a state actor where it exercises powers traditionally and exclusively reserved to the state, the fact the government licenses, contracts with, or grants a monopoly to a private entity, or if the private entity receives federal funding, does not transform the private entity into a state actor.[34] The private entity is not a state actor unless it performs a traditional, exclusive public function. Judge Schmehl dismissed the litigious patient's claims against the health network's general counsel with prejudice.[35]

We find the Supreme Court's analysis in *Halleck* controls. We have no facts suggesting PhillyCAM performs a traditional, exclusive public function. Mr. Wardlaw does not allege the City compelled PhillyCAM to take a particular action. He does not allege the City acted jointly with the private entity PhillyCAM. Mr. Wardlaw does not allege facts allowing us to plausibly infer PhillyCAM and its Board are state actors. We dismiss Mr. Wardlaw's First Amendment claim against PhillyCAM and its directors.

### B. We dismiss Mr. Wardlaw's disparate treatment claim of racial and political discrimination under the Civil Rights Act of 1964.

Mr. Wardlaw also claims the decision to not air his film demonstrates racially and politically motivated disparate treatment under the Civil Rights Act of 1964. "The Civil Rights Act of 1964, comprised of eleven titles and numerous sections, has been called the 'most comprehensive undertaking' to prevent and address discrimination in a wide range of contexts."[36]

Mr. Wardlaw fails to identify which provision(s) of the Civil Rights Act of 1964 he claims the City or PhillyCAM and its Board violated. We cannot address the viability of his claims of racially and politically motivated disparate treatment based solely on a general reference to the Act. We grant Mr. Wardlaw leave to amend with facts and cognizable claims under the Act. Mr.

8

Wardlaw—should he choose to amend—must (1) point to the specific provision(s) of the Act upon which his claims are based; and (2) plead sufficient facts he is entitled to relief under such provision(s).

### III. Conclusion

Exavier L. Wardlaw sues the City of Philadelphia, PhillyCAM Public Access TV and its Board of Directors because they refused to air a film. Mr. Wardlaw alleges they violated the Civil Rights Act of 1964 and his First Amendment rights. We grant the City of Philadelphia, PhillyCAM, and the Board of Directors' Motions to dismiss for failure to state claims under section 1983 and the Civil Rights Act of 1964 with leave to amend. We deny the alternative request for a more definite statement as moot.

---

[1] ECF Doc. No. 2 at 4 ("I would like the City of Philadelphia to inform PhillyCAM that citizens (members) have the right of Freedom of Speech and not to discriminate against members for political reasons.").

[2] PhillyCAM describes itself as "the non-profit designated by the City of Philadelphia to operate its public access television network." *See* https://phillycam.org/about. When evaluating a motion to dismiss we may consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.2004)).

[3] ECF Doc. No. 2 at 3.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 3–4. We twice dismissed earlier cases he brought as frivolous under 28 U.S.C. §1915 when he did not pay the filing fee. We dismissed Mr. Wardlaw's pro se complaints as frivolous when he sued the Philadelphia Water Revenue Department for water service as time barred (No. 18-1128)

and when he sued a supermarket and private security company as they are not state actors (No. 21-1547). He now pays the filing fees but this most recent pro se claim also lacks merit.

[7] *Id.* at 3.

[8] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[9] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)) (emphasis omitted).

[10] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[11] *Id.* (quoting *Mala*, 704 F.3d at 245).

[12] 42 U.S.C. § 1983.

[13] *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[14] 139 S. Ct. 1921 (2019).

[15] *Id.* at 1927.

[16] *Id.* at 1927–30.

[17] *Id.* at 1928 (citations omitted).

[18] *Id.* at 1929.

[19] *Id.* (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)).

[20] *Id.* at 1929 (collecting cases).

[21] *Id.* at 1929–30.

[22] *Id.* at 1930–32.

[23] *Id.* at 1933–34.

[24] *Id.* at 1930–31 (citing *Hudgens v. NLRB*, 424 U.S. 507 (1976)).

[25] *Id.* at 1930.

[26] *Id.*

[27] *Id.* at 1931–32.

[28] *Id.* at 1933–34.

[29] *Id.*

[30] 394 F. Supp. 3d 497 (E.D. Pa. 2019).

[31] *Id.* at 505–06.

[32] *Rose v. Guanowsky*, No. 21-875, 2021 WL 5356804 (E.D. Pa. Nov. 17, 2021).

[33] *Id.* at *4-*5.

[34] *Id.*

[35] *Id.* at *5.

---

[36] *Lazar v. Town of W. Sadsbury, Pa.*, No. 20-5336, 2021 WL 632639, at *6 (E.D. Pa. Feb. 18, 2021) (quoting Congressional Research Service, C. Back, *The Civil Rights Act of 1964: An Overview*, at 1 (Sept. 21, 2020)) (dismissing without prejudice a Civil Rights Act of 1964 claim for failure to state a claim where plaintiff failed to specify which provision under the Act gave rise to his claim or claims).